# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RUBEN TRUJILLO,

               Petitioner,

     v.                                                             CV 06-0147 MV/WPL

JAMES JANECKA, WARDEN, AND
JOE WILLIAMS, SECRETARY OF
CORRECTIONS,

               Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      Ruben Trujillo was convicted by a jury of four counts of first-degree criminal sexual penetration and five counts of criminal sexual contact of a minor. He was sentenced to thirty years in prison in 1994. (Doc. 12 Ex. A.) According to Trujillo, he earned good-time credits throughout his incarceration until 2005. (Doc. 1 at 17.) In that year, prison officials recommended him for the Community Reintegration Program (CRU), which is a treatment program for sex offenders. (Doc. 19 Ex. EE.) Trujillo refused to participate in the CRU. As a result, his eligibility for good-time credits was terminated.

      Trujillo has filed a petition for writ of habeas corpus, arguing primarily that he has a protected liberty interest in earning good-time credits and that prison officials violated his right to due process in terminating his eligibility for the credits. He also raises several related claims concerning the conditions of his confinement. (Doc. 1.)

      The matter is before me now on Respondents' motion to dismiss and memorandum in support (Doc. 10, 11) and Trujillo's response (Doc. 19). For the reasons that follow, I recommend that the motion to dismiss be granted and that Trujillo's claims be dismissed.

## PROCEDURAL BACKGROUND[1]

On June 9, 2005, Trujillo appeared before the classification committee and was presented with a form entitled "Acknowledgement and Agreement Regarding the Community Reintegration Unit Program." (*Id.* at 6.) The form states that Trujillo has been recommended for the CRU and that if he refuses to participate he "will not be awarded good time." (*Id.* Ex. FF.)[2] Trujillo admits that he read this form. (*Id.* at 6.) He signed an accompanying form, stating that he refused to participate in the CRU. (*Id.* at 6 & Ex. GG; Doc. 12 Ex. C.) Consequently, a disciplinary proceeding was brought against him, resulting in a reprimand, and he was informed that he would no longer earn good-time credits. (Doc. 12 Ex. B, L, N.) Trujillo appealed both the reprimand and the termination of his eligibility for good-time credits. (*Id.* Ex. D, O.)

The reprimand was upheld. (*Id.* Ex. P.) As a result, Trujillo was subsequently denied a pay raise for his work as a quilter. (*Id.* Ex. Q.)

The termination of Trujillo's eligibility for good-time credits was reversed. The classification appeals officer stated, "You will continue to earn good time as long as you are involved in other programming . . . , or until NMCD policy requires otherwise." (*Id.* Ex. D.)

On June 28, 2005, Trujillo appeared again before the classification committee, and the

---

[1] The copies of some of the classification committee reports submitted by the parties are illegible because the print is too faint. Some of the copies submitted by Respondents were obviously copied from the exhibits to Trujillo's petition. Moreover, Respondents have not provided copies of all of the relevant documents from the prison proceedings, nor have they provided a complete copy of Trujillo's state habeas petition. Respondents do not explain their failure to provide complete and legible copies. There are also discrepancies between Trujillo's version of the prison proceedings and Respondents' version. When in doubt, I have accepted Trujillo's version, which is largely supported by the exhibits attached to his petition and to his response to the motion to dismiss.

[2] Although the terms "good-time" or "good-time credits" are used in the record and by the parties, the applicable statute uses the term "earned meritorious deductions." *See* N.M. STAT. ANN. § 33-2-34.

2

committee deferred action on whether to terminate his eligibility for good-time credits. (*Id.* Ex. F.) Trujillo appealed, and the classification appeals officer again stated, "Your goodtime [sic] will not stop as a result of not participating in the CRU program. You will continue to earn goodtime [sic] as long as you are involved in full-time programming (work or education) or until such time as NMCD policy dictates otherwise." (*Id.* Ex. E, G.)

On July 12, 2005, Trujillo appeared for a third time before the classification committee for the purpose of "Stop Good Time," but no action was taken "per Warden." A notation was made that Trujillo would "get g.t. if programming." (Doc. 1 Ex. E.)

On August 23, 2005, Trujillo appeared for the final time before the classification committee, and the committee again decided to terminate his eligibility for good-time credits because of his refusal to participate in the CRU. (Doc. 12 at 2 & Ex. I.) Trujillo appealed. (*Id.* Ex. I.) Although it appears that this appeal was never resolved, the decision to terminate Trujillo's eligibility for good-time credits was eventually affirmed as a result of a subsequent appeal. (Doc. 19 at 11 & Ex. LL.)

Trujillo filed a petition for writ of habeas corpus in state court, raising thirteen issues. (*Id.* Ex. RR.) The petition was summarily denied. (Doc. 12 Ex. S.) Trujillo then filed a motion for reconsideration, a motion for a temporary restraining order, and a petition for writ of certiorari. (*Id.* Ex. T, U, W.) The lower court apparently did not rule on the motions for reconsideration and for a temporary restraining order. The state supreme court denied certiorari. (*Id.* Ex. X.)

### FEDERAL HABEAS CLAIMS

In his federal habeas petition, Trujillo asserts the same issues that he raised in his state habeas petition. These issues are:

1) Did prison officials violate his right to due process by terminating his eligibility for good-

time credits?

2) Does he have a protected liberty interest in receiving good-time credits?

3) Was he denied due process during the classification appeals?

4) Did prison officials have authority to place him in a mental-health unit without a court-order adjudicating him to be mentally ill?

5) Did prison officials have authority to deprive him of good-time credits because he refused to voluntarily sign-up for the CRU?

6) Did prison officials create a pervasive risk of harm to Trujillo by revealing his sex-based convictions to other inmates and by failing to place him in proper housing?

7) Did prison officials deprive him of a liberty interest by denying him a pay raise?

8) Did prison officials deprive him of due process on appeal by refusing to provide him with a copy of an alleged directive that allowed them to terminate his good-time credits?

9) Do prison mental health staff lack the qualifications to run the CRU?

10) Are the CRU policies constitutional, given that mental health programs are generally administered by request of the individual or judicial commitment?

11) Has Trujillo been denied meaningful access to the courts because his prison does not have a law library or qualified personnel to help inmates with legal issues?

12) Should this Court issue a temporary restraining order or injunction to compel prison officials to place Trujillo in proper housing because of the pervasive risk of harm to him that they have created?

13) Has Trujillo made an initial prerequisite showing of negligence, deliberate indifference, pervasive risk of harm, cruel and unusual punishment, and conspiracy to deprive him of his constitutional rights?  (Doc. 1 at 8-11, 17; Doc. 19 at 16-17 & Ex. RR.)

Trujillo raises two additional issues that were not presented in his state habeas petition:

14) Should this Court issue a temporary restraining order or injunction to prevent prison officials from retaliating against him by placing him in administrative segregation or transferring him to a less secure prison where he would be placed in a greater pervasive risk of harm?

> 15) Should this Court compel prison officials to preserve a recording of another inmate's disciplinary hearing at which there was testimony regarding CRU policy because it would show that CRU policy is not being applied equally? (Doc. 1 at 15-16.)

Issue 14 was raised in Trujillo's motion for a temporary restraining order and in his petition for writ of certiorari. (Doc. 12 Ex. U, W at 32-33.) Issue 15 was raised in Trujillo's petition for writ of certiorari. (*Id.* Ex. W at 34-35.)

## DISCUSSION

### *Cognizability and Exhaustion*

Pursuant to 28 U.S.C. § 2241, a prisoner may attack the execution of his sentence in the district where he is confined. *Boyce v. Ashcroft*, 251 F.3d 911, 914 (10th Cir.), *vacated as moot*, 268 F.3d 953 (10th Cir. 2001). "Generally, because they contest the fact or duration of custody, prisoners who want to challenge their convictions, sentences or administrative actions which revoke good-time credits, or who want to invoke other sentence-shortening procedures, must petition for a writ of habeas corpus." *Id.* But "[p]risoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, *e.g.* conditions of confinement, must proceed under [42 U.S.C. § 1983]." *Id.*

Construing Trujillo's arguments liberally, Issues 1-5, 8, 10, and 15 relate to the termination of his eligibility for good-time credits. Therefore, they are cognizable in this habeas proceeding. Issues 6, 7, 9, and 11-14 relate to the conditions of Trujillo's confinement. Therefore, they are not cognizable. *See id.* at 914, 918; *see also Wiley v. Holt*, 42 F. App'x 399, 400 (10th Cir. 2002) (unpublished) (claim regarding concern for prisoner's safety should be brought as a civil rights action); *United States v. Brittain*, 41 F. App'x 246, 249 n.2 (10th Cir. 2002) (unpublished) (claim for

5

denial of access to the courts should be brought as a civil rights action).

A habeas petitioner seeking relief under 28 U.S.C. § 2241 is generally required to exhaust the remedies available in state court. *Wilson v. Jones*, 430 F.3d 1113, 1118 (10th Cir. 2005), *cert. denied*, 2006 WL 1706818 (Oct. 2, 2006). Respondents argue that Trujillo's entire petition should be dismissed without prejudice because he failed to exhaust most of his conditions-of-confinement claims by omitting them from his petition for writ of certiorari. Although the petition for writ of certiorari only contains detailed arguments on a few issues, it states that it raises the same issues as were raised in the habeas petition for purposes of exhaustion. (Doc. 12 Ex. W. at 2.) But regardless of whether the conditions-of-confinement claims were exhausted in state court, the proper resolution is to dismiss the conditions-of-confinement claims without prejudice to refiling under 42 U.S.C. § 1983 and to consider the cognizable habeas claims on their merits. *See, e.g., Abdulhaseeb v. Ward*, 173 F. App'x 658, 660-61 (10th Cir. 2006) (unpublished); *Farris v. Poppell*, No. 00-6034, 2000 WL 990678, at *1-2 (10th Cir. July 19, 2000) (unpublished); *see also Heck v. Humphrey*, 512 U.S. 477, 480 (1994) (holding that exhaustion of state remedies is generally not a prerequisite to a prisoner's action under § 1983).

### *Standard of Review*

Because the state courts did not expressly deny habeas relief on procedural grounds, I presume that they adjudicated Trujillo's claims on the merits. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004), *cert. denied*, 126 S. Ct. 729 (2005). Therefore, I must accord deference to the state courts' determination of the federal constitutional issues involved in Trujillo's claims regarding good-time credits. *See Henderson v. Scott*, 260 F.3d 1213, 1215 (10th Cir. 2001); *cf.* 28 U.S.C. § 2254(d) (setting forth a deferential standard of review for claims that were "adjudicated on

the merits in State court proceedings").

### *Due Process Claim*

Trujillo's complaints about the termination of his eligibility for good-time credits are primarily based on the constitutional requirement of due process. A prisoner is entitled to due process before he is subjected to disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 487 (1995); *see also Wilson*, 430 F.3d at 1117.

The applicable statute provides that to earn good-time credits, a prisoner "must be an active participant in programs recommended for the prisoner by the classification committee and approved by the warden." N.M. STAT. ANN. § 33-2-34(A). Further, a prisoner "may earn" good-time credits "upon recommendation by the classification committee, based upon the prisoner's active participation in approved programs and the quality of the prisoner's participation in those approved programs." *Id.* § 33-2-34(B). The statute finally provides that a prisoner is not eligible to earn good-time credits if the prisoner "is not an active participant in programs recommended and approved for him by the classification committee." *Id.* § 33-2-34(F)(4).

Respondents argue that Trujillo did not have a liberty interest in earning good-time credits because the statute grants prison officials discretion in deciding whether to award the credits. Therefore, they assert, Trujillo cannot establish that he would have continued to earn good-time credits but for his refusal to participate in the CRU.

Decisions by the Tenth Circuit and other courts suggest that Respondents' analysis is wrong. These decisions indicate that when a prisoner's eligibility for credits or parole is conditioned upon completion of a sex-offender treatment program, the prisoner is entitled to due process before being assigned to the program. *See Reed v. McKune*, 298 F.3d 946, 954 (10th Cir. 2002); *Chambers v.*

7

*Colo. Dep't of Corr.*, 205 F.3d 1237, 1242-43 (10th Cir. 2000); *Neal v. Shimoda*, 131 F.3d 818, 827-30 (9th Cir. 1997); *see also Brooks v. Shanks*, 885 P.2d 637, 641 (N.M. 1994) (holding that New Mexico prisoners have a liberty interest in the eligibility to earn good-time credits).

Here, it is undisputed that prison officials recommended Trujillo for the CRU and that they terminated his eligibility for good-time credits solely because he refused to participate in the CRU.[3] Although the statute's use of the word "may" gives prison officials discretion to terminate good-time credits for other reasons, the statute mandates that a prisoner cannot earn good-time credits unless he participates in programs recommended for him. *See* N.M. STAT. ANN. § 33-2-34(A), (B), (F)(4). Therefore, Trujillo was entitled to due process before being assigned to the CRU. *See Wilson*, 430 F.3d at 1120-21; *see also Wilkinson v. Austin*, 545 U.S. 209 (2005) (holding that prisoners had a liberty interest in avoiding assignment to a "supermax" prison because, among other things, assignment there disqualified an otherwise eligible prisoner from parole consideration).

The question that remains is whether Trujillo was afforded all the process that he was due. Trujillo complains about several irregularities in the procedure that was followed before his eligibility for good-time credits was terminated. For instance, his initial appeals were sustained on the apparent basis that there was no policy requiring him to participate in the CRU. When he lost his final appeal, he was told that the Corrections Department had issued a directive that changed the policy. When he asked for a copy of the directive, he was told that it was not in writing.

Before a prisoner who has not been convicted of a sex offense may be subjected to a treatment program for sex offenders as a condition for early release, prison officials must provide the

---

[3] In the memorandum in support of their motion to dismiss, Respondents state that "the 'substantive predicate' to the decision to stop Petitioner's eligibility to earn good time credit was the Classification Committee's assignment of Petitioner to the CRU." (Doc. 11 at 10.)

prisoner with advance written notice and a written statement of reasons why he has been classified as a sex offender. In addition, the prisoner may be entitled to an opportunity to call witnesses and present documentary evidence. *See Neal*, 131 F.3d at 830-31; *see also Wilson*, 430 F.3d at 1117. However, a prisoner who has been convicted of a sex offense in a prior adversarial proceeding has already received the minimum protections required by due process. *Neal*, 131 F.3d at 831. Accordingly, because Trujillo was convicted by a jury of multiple sex offenses, all the prison officials had to do to comport with due process was to notify him that he was required to participate in the CRU. *See id.* The prison officials complied with this requirement.

Trujillo also asserts that he was never actually assigned to the CRU and that the CRU is a voluntary program. Thus, he argues that prison officials did not have the authority to terminate his good-time credits based on his refusal to participate in the CRU. All the statute requires is that he be "recommended" for the program, and it is clear that he was recommended for the CRU. *See* N.M. STAT. ANN. § 33-2-34(A), (F)(4). The CRU is voluntary because prisoners have a choice to participate and be eligible for good-time credits or not to participate and not be eligible for the credits.

In his response to the motion to dismiss, Trujillo emphasizes that he pled not guilty at his criminal trial and testified that he did not commit the offenses. Participants in the CRU must admit their sexually deviant behavior. Moreover, any specific information indicating that a participant has committed a crime may be disclosed to law enforcement. (Doc. 19 Ex. EE.) Based on these provisions, Trujillo suggests that if he participates in the CRU, he may be prosecuted for perjury. However, participants in the CRU are not required to disclose specific victims or crimes and they have the right not to incriminate themselves. (*Id.*) Even if Trujillo were presented with the choice

9

of incriminating himself or losing his eligibility for good-time credits, putting him to that choice would not violate the Fifth Amendment. *See Wirsching v. Colorado*, 360 F.3d 1191, 1203-05 (10th Cir. 2004).

Trujillo does not directly assert an equal protection claim. However, Issue 15 arguably alludes to equal protection because it asserts that the CRU policy is not being applied the same to all prisoners. Trujillo does not claim that Respondents treated him differently because of any suspect classification. Therefore, he must show that the distinction between himself and other prisoners was not reasonably related to some legitimate penological purpose. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Trujillo asserts that another prisoner was charged with a disciplinary offense for refusing to participate in the CRU, but unlike Trujillo, his discipline was reversed. Prisoners may be assigned to the CRU when they have less than four years remaining until their projected release date. (Doc. 19 Ex. EE.) It appears that the other prisoner did not meet this requirement. (*Id.* Ex. TT.) Trujillo fails to demonstrate that this requirement is not reasonably related to a legitimate penological purpose.

## RECOMMENDATION

For the reasons stated above, I recommend that:

1) Trujillo's habeas petition (Doc. 1) be denied;

2) the motion to dismiss (Doc. 10 ) be granted;

3) Trujillo's conditions-of-confinement claims (Issues 6, 7, 9, and 11-14) be dismissed without prejudice; and

4) Trujillo's habeas claims (Issues 1-5, 8, 10, and 15) be dismissed with prejudice.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE