IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN TRUJILLO,
          Petitioner,

v.                                                        CV 06-0147 MV/WPL

JAMES JANECKA, WARDEN, AND
JOE WILLIAMS, SECRETARY OF
CORRECTIONS,
          Respondents.

**ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

This matter is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition (PFRD) and Ruben Trujillo's objections thereto. (Doc. 20, 23). I find the objections to be without merit for the following reasons.

The objections are untimely. The PFRD was filed on October 18, 2006, and the objections were originally due within ten days of service of the PFRD. (Doc. 20 at 11.) On November 2, 2006, Trujillo filed a motion for a 45-day extension of time. (Doc. 21.) The magistrate judge granted the motion in part and ordered the objections to be filed by December 11, 2006. (Doc. 22.) Trujillo did not file his objections, however, until December 14, 2006. Nevertheless, because Trujillo is pro se and incarcerated, I will consider the merits of the objections. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Summers v. Utah*, 927 F.2d 1165, 1167-68 (10th Cir. 1991).

Trujillo initially complains that the magistrate judge failed to rule on his fourth and tenth issues. Those issues concern whether prison officials have authority to place him in a mental-health unit without a court order adjudicating him mentally ill and whether the CRU policies are constitutional, given that mental health programs are generally administered at the request of the

individual or by judicial commitment. The magistrate judge ruled on these issues when he indicated that because Trujillo was convicted by a jury of multiple sex offenses, the prison officials had authority to place him in the CRU. (Doc. 20 at 9); *see Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997).

Next, Trujillo refers to the first footnote in the PFRD, which faults Respondents for failing to provide complete and legible copies of relevant documents. (Doc. 20 at 2.) The magistrate judge cured any prejudice to Trujillo from this failure by accepting his version of events. (*Id.*) The failure to supply complete and legible copies does not warrant sanctions.

Trujillo believes the magistrate judge misunderstood the procedural history of his claims in the prison. He asserts that the document cited in the PFRD as resolving his appeal from the termination of his good-time credits on August 23, 2005 did not actually relate to that appeal. Before citing this document, the PFRD states, "Although it appears that this appeal was never resolved, the decision to terminate Trujillo's eligibility for good-time credits was eventually affirmed as a result of a subsequent appeal." (*Id.* at 3.) Thus, the magistrate judge understood that the document did not directly resolve the appeal. As I read the PFRD, this discussion was included only to demonstrate that a final administrative decision had been made regarding Trujillo's good-time credits and that his administrative remedies were exhausted.

Turning to the substance of his claims, Trujillo continues to argue that he was never actually assigned to the CRU. He further argues that because his initial appeals were granted, he "should have been afforded due process all over" at the August 23rd classification committee meeting. (Doc. 23 at 6.)

The magistrate judge rejected Trujillo's assertion that he was never assigned to the CRU by

2

noting that the applicable statute only required him to be recommended for the program and that it was clear that Trujillo was recommended for the CRU. (Doc. 20 at 9.) Trujillo points out that the full text of the statute makes eligibility for good-time credits dependent on being an active participant in programs recommended for the prisoner "and *approved* by the warden." N.M. STAT. ANN. § 33-2-34(A) (emphasis added). Trujillo asserts, "The 'approval' process . . . would then be implemented in the actual assignment to a program." (Doc. 23 at 8.) To demonstrate that he was never assigned to the CRU, he refers to a document from the June 9, 2005 classification committee meeting, which states, "Committee Action: Denied CRU." (Doc. 12 Ex. B.)

What Trujillo fails to note is that the document also states that the reason for his appearance before the classification committee was "Program Assignment CRU" and the "Justification" for the committee's action (*i.e.*, "Denied CRU") was "Inmate refused to program." (*Id.*) Moreover, on that same date, Trujillo signed a form stating that he refused to participate in the CRU after being advised that he would not be awarded good-time credits if he refused. (Doc. 20 at 2.) It is therefore clear that Trujillo was assigned to the CRU and that he refused to participate. He was notified that he was required to participate in the CRU and of the consequences for refusing. This is all the process to which he was due. *See Neal*, 131 F.3d at 831. Although Trujillo wants to have "due process all over," he does not indicate what would be accomplished by additional procedures. Notably, there is nothing in any of his pleadings before this Court to indicate that he is willing to participate in the CRU.

Trujillo also quibbles with the magistrate judge's conclusion that the CRU is voluntary because prisoners have a choice to participate and be eligible for good-time credits or not to participate and not be eligible for the credits. Citing *Black's Law Dictionary*, Trujillo asserts that

3

the choice to participate in the CRU is affected by outside force or influence and is compelled because of the desire to earn good-time credits. *See* BLACK'S LAW DICTIONARY 1605 (8th ed. 2004) (defining one sense of "voluntary" as "[u]nconstrained by interference; not impelled by outside influence"). *But see id.* (defining another sense of "voluntary" as "[d]one by design or intention").

The Supreme Court has observed that the legal system "is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *See McGautha v. California*, 402 U.S. 183, 213 (1971) (internal citation omitted), *vacated in part on other grounds by Crampton v. Ohio*, 408 U.S. 941 (1972). Participation in the CRU is not rendered involuntary merely because eligibility for good-time credits is contingent upon participation. *Cf. Searcy v. Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002) (holding that participation in sex offender treatment program was not involuntary where participants were required to make incriminating admissions); *United States v. Speed Joyeros, S.A.*, 204 F. Supp. 2d 412, 423 (E.D.N.Y. 2002) (Weinstein, J.) (stating that *Black*'s definition of "voluntary" is not helpful in determining whether a guilty plea is voluntary since a defendant is always influenced by many factors).

Trujillo next argues that the magistrate judge erroneously rebuffed his concerns regarding perjury. Citing a 2004 CRU policy statement, the magistrate judge suggested that Trujillo need not be concerned about a possible perjury prosecution because participants in the CRU are not required to disclose specific victims or crimes and they maintain the right not to incriminate themselves. (Doc. 20 at 9.) Trujillo has provided a June 28, 2006 policy statement that seems to undercut the magistrate judge's reasoning. Although participants still have the right not to incriminate themselves,

4

they are only exempted from disclosing specific crimes for which they have not been convicted. They are required to discuss specific details of the sex offense for which they have been convicted and to take responsibility for that offense. (Doc. 23 Ex. F.)

I find it unnecessary to consider the effect of the 2006 policy statement. As the magistrate judge correctly noted, "Even if Trujillo were presented with the choice of incriminating himself or losing his eligibility for good-time credits, putting him to that choice would not violate the Fifth Amendment. *See Wirsching v. Colorado*, 360 F.3d 1191, 1203-05 (10th Cir. 2004)." (Doc. 20 at 9-10.)

Liberally construing Trujillo's petition, the magistrate judge noted that one of Trujillo's issues arguably alluded to equal protection. Trujillo now confirms that he does intend to mount an equal protection challenge. He has attached affidavits from three other inmates in an attempt to show that he was treated differently. (Doc. 23 Ex. G, H, I.) The affidavits assert that these inmates were unfairly or erroneously assigned to the CRU. Trujillo, of course, cannot raise any unfairness or errors related to other inmates in his habeas proceeding.

Two of the inmates appear to have been subjected to similar disciplinary and classification actions as Trujillo, but their eligibility to earn good-time credits was ultimately restored. Nevertheless, Trujillo has failed to show that the distinction between himself and the other inmates was not reasonably related to some legitimate penological purpose. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). "[I]t is clearly baseless to claim that there are other inmates who are similar in every relevant respect." *Id.* (citation and internal quotation marks omitted). Moreover, the assertions in the affidavits are not supported by the documents accompanying the affidavits. The affidavits assert that the inmates' "write-ups" for refusal to participate in the CRU were done by an

official who did not have the requisite authority—the same official who reported Trujillo's refusal to participate in the CRU. According to the affidavits, the inmates' eligibility to earn good-time credits was restored because of this irregularity. However, the documents accompanying the affidavits only reflect that the report of failure to participate in the CRU was dismissed on appeal and that the CRU write-up was "in error," respectively. (Doc. 23 Ex. H, I.)

Finally, Trujillo asserts that he is entitled to an evidentiary hearing. No evidentiary is needed, however, because Trujillo's claims can be resolved on the basis of the record before the Court. *Cf. Parker v. Scott*, 394 F.3d 1302, 1324 (10th Cir. 2005) (28 U.S.C. § 2254 case). Having conducted a *de novo* review, I find Trujillo's objections to be without merit.

IT IS THEREFORE ORDERED that:

1) the Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 20) are adopted by the Court;

2) the habeas petition (Doc. 1) is denied;

3) the motion to dismiss (Doc. 10) is granted;

4) the conditions-of-confinement claims (Issues 6, 7, 9, and 11-14) are dismissed without prejudice; and

5) the habeas claims (Issues 1-5, 8, 10, and 15) are dismissed with prejudice.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE